# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**DENNIS HUTCHINSON**                                                                     **PETITIONER**
**ADC#143206**

**V.**                              **CASE NO. 5:13CV00052 JLH/BD**

**RAY HOBBS, Director,**
**Arkansas Department of Correction**                                          **RESPONDENT**

## RECOMMENDED DISPOSITION

**I.**     **Procedure for Filing Objections**

The following Recommended Disposition ("Recommendation") has been sent to United States District Court Judge J. Leon Holmes. Mr. Hutchinson – or any party – may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation. A copy will be furnished to the opposing party.

If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

>Mail your objections to:
>
>>Clerk, United States District Court
>>Eastern District of Arkansas
>>600 West Capitol Avenue, Suite A149
>>Little Rock, AR 72201-3325

**II.**    **Background**

After a trial that ended on November 3, 2008, a Pulaski County Circuit Court jury found Petitioner Dennis Hutchinson guilty of second-degree murder. The Pulaski County clerk entered the judgment and commitment order on November 12, 2008.

The conviction resulted from the fatal shooting of Richard Ivey. At approximately 3:00 a.m. on January 15, 2008, Mr. Ivey entered Mr. Hutchinson's home. Mr. Ivey's estranged wife, Brenda Ivey, was living with Mr. Hutchinson at the time. Both Mr. Hutchinson and Brenda Ivey shot Mr. Ivey. Mr. Hutchinson claims he shot Mr. Ivey in self-defense. Brenda Ivey, however, testified that she and Mr. Hutchinson lured Mr. Ivey to the residence under false pretenses so they could kill him.

Mr. Hutchinson appealed his conviction to the Arkansas Court of Appeals. The Court of Appeals affirmed his conviction on March 10, 2010. *Hutchinson v. State*, 2010 Ark. App. 253, 2010 WL 816253 (Mar. 10, 2010). Mr. Hutchinson did not petition the Supreme Court of Arkansas for discretionary review. (#10, at p. 3) Instead, Mr. Hutchinson filed a Rule 37 petition for postconviction relief on July 28, 2011. (#16-1 and 16-2) The circuit court denied his petition as untimely on December 29, 2011. (#16-2, at p. 111)

On February 19, 2013, Mr. Hutchinson filed the pending petition for writ of habeas corpus. (docket entry #2)  In the petition, he alleges a number of constitutional deficiencies in his trial. (#2)  Respondent, Director Ray Hobbs, contends that the petition is time-barred and that the claims are procedurally defaulted. (#10)

Mr. Hutchinson filed a reply brief addressing the Respondent's procedural default argument and claiming an "actual innocence" exception to the one-year limitations period. (#12)  Director Hobbs filed a supplemental brief addressing recent Supreme Court decisions regarding procedural default and the statute of limitations. (#16)  For the reasons explained below, the Court will recommend that Judge Holmes DISMISS Mr. Hutchinson's petition, with prejudice.

### III.  Discussion

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1), establishes a one-year limitations period for a state prisoner to commence a habeas corpus proceeding under 28 U.S.C. § 2254.  The limitations period begins to run from, "the date on which the judgement became final by the conclusion of direct review or the expiration of the time limit for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

If a petitioner pursues direct review to the United States Supreme Court, judgment becomes final when the Supreme Court either affirms the conviction on the merits or denies the petition for certiorari. *Gonzalez v. Thaler*, __ U.S. __, 132 S.Ct. 641, 653

(2012). If the petitioner does not pursue direct review in the Supreme Court, the judgment becomes final at the expiration of the time to seek review in the Supreme Court, that is, ninety days after the conclusion of the petitioner's direct appeals in the state system. *King v. Hobbs*, 666 F.3d 1132, 1135 (8th Cir. 2012)(citations omitted).

The Supreme Court may review a judgment of a state court of last resort, or of a lower state court, if the state court of last resort has denied discretionary review. *Gonzalez*, 132 S.Ct. at 656 (citations omitted). For petitioners who do not seek review in the state court of last resort, the judgment becomes final when the time for seeking such review expires. *King*, 666 F.3d at 1135.

Mr. Hutchinson did not petition the Supreme Court of Arkansas to review the Arkansas Court of Appeals' decision. So the one-year limitations period began to run no later than March 30, 3010, when his time to seek review in the Supreme Court of Arkansas expired.[1] Yet Mr. Hutchinson waited to file the pending petition until February 19, 2013 – almost three years after his conviction became final. His claims are barred by the one-year statute of limitations, unless the limitations period can be tolled.

---

[1] The Arkansas Court of Appeals issued its opinion on March 10, 2010. *Hutchinson v. State*, 2010 Ark. App. 253, 2010 WL 816253 (Mar. 10, 2010). A defendant has 18 calendar days from the date of decision to petition the Supreme Court of Arkansas for review. Ark.Sup.Ct. R. 2-4(a). When, as here, the last day for filing falls on a Sunday, the time is extended to the next business day. Ark.R.App.P.Crim. R. 17. The time to petition for review extended to Monday, March 29, 2010, and the limitations period began to run the following day, March 30, 2010.

A.   *Statutory Tolling*

The time during which a properly filed application for State postconviction or other collateral review is pending does not count toward the limitations period. 28 U.S.C. § 2244(d)(2). Mr. Hutchinson, however, never "properly filed" any postconviction petitions. He did file a Rule 37 petition but it was untimely, thus not "properly filed." Mr. Hutchinson is not entitled to statutory tolling, and his claims are barred unless saved by equitable tolling.[2]

B.   *Equitable Tolling*

The statute of limitations set out in 28 U.S.C. § 2244(d) is subject to equitable tolling. *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). But a petitioner invoking equitable tolling bears the burden of establishing that he has been pursuing his rights diligently and that some extraordinary circumstance stood in the way of a timely filing. *Id*. at 2562 (citing *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005)). While equitable tolling is a recognized exception to the one-year limitations period, it affords an "exceedingly narrow window of relief." *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001).

Mr. Hutchinson argues that his "actual innocence" entitles him to equitable tolling. (#12, pp. 12-14) He argues, alternatively, that the "outright denial of his right to counsel

---

[2] Mr. Hutchinson argues exclusively for equitable tolling in his reply. (#12, pp. 12-16) It appears he agrees that the possibility of statutory tolling is not an issue in this case.

for purposes of state postconviction review" also entitles him to equitable tolling. (#12, pp. 14-16)

1. *Actual Innocence*

The Supreme Court of the United States recently held that actual innocence, when proved, allows a petitioner to overcome expiration of the AEDPA's one-year limitations period. *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1928 (2013). To make a threshold showing of actual innocence, a petitioner must show that, in light of new evidence, no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *Id*. (citations omitted). Diligence and the timing of the petition are considerations when assessing whether a petitioner has made a convincing showing of actual innocence. *Id*. at 1936.

To be credible, a claim of actual innocence requires a petitioner to support his allegations with "reliable evidence– whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence– that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 865 (1995). Mr. Hutchinson has not made this showing.

In support of his claim, Mr. Hutchinson provides a letter, possibly written by Brenda Ivey, that might indicate that she lied about Mr. Hutchinson's role in Mr. Ivey's murder. (#12, at p. 18) Even Mr. Hutchinson is not sure that the letter was written by Brenda Ivey. He states, "[i]f the proof shows that the letter was actually written by Ms.

Ivey, it amounts to a recantation . . .". (#12, at p. 12) The letter is undated, signed by a "Lil B", and it references a lie about "Daddy" (presumably Mr. Hutchinson). It does not specify what the lie was. This letter does not amount to a recantation of sworn testimony that was subject to cross-examination in open court. If Mr. Hutchinson had presented a sworn affidavit by Brenda Ivey that explicitly stated she lied under oath about Mr. Hutchinson's involvement in Mr. Ivey's murder, this would be a close call. As it stands, Mr. Hutchinson has fallen far short of presenting reliable evidence to support his claim of actual innocence. When the evidence presented by Mr. Hutchinson is compared to evidence sufficient to present a claim for actual innocence, the insufficiency of the "Lil B" letter is obvious.

In *House v. Bell*, 547 U.S. 518, 126 S.Ct. 2064 (2006), the Supreme Court discussed evidence sufficient to proceed with a claim of actual innocence. *House* involved a conviction for murder and a possible sexual assault. DNA testing showed, in direct contradiction to evidence at trial, that semen on the victim's nightgown and panties came from her husband, not Mr. House. *Id*.

Also, at trial the government had argued that Mr. House could not explain how the victim's blood ended up on his jeans. Testing after the trial, however, showed that the bloodstains on Mr. House's jeans most likely came from blood samples taken during the victim's autopsy. The autopsy blood samples were placed inside a cardboard box, with the jeans and other evidence, and transported during a 10-hour car ride to the FBI. The

jeans were in a paper bag in the box. The paper bag was apparently discarded, but the plastic bag where the jeans were ultimately place had a five-inch long, two-inch wide streak of blood down the front of the bag. *Id*.

The Supreme Court noted that if Mr. House had presented only the scientific evidence about the blood and semen, evidence favoring conviction "might well suffice to bar relief." *Id*. at 548. But Mr. House also had sworn testimony during his habeas hearing from two different witnesses that the victim's husband had confessed to the murder; two more witnesses described the husband's suspicious behavior (a fight and an attempt to construct a false alibi) around the time of the crime; and additional witnesses described a history of physical abuse. *Id*. at 551.[3]

In *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851 (1995), Mr. Schlup was sentenced to death for participating in the murder of a fellow prisoner. There was no physical evidence to support the conviction, only testimony from two corrections officers that three white inmates (including Mr. Schlup) attacked a black inmate. There was no question about the participation of two of the three inmates, but Mr. Schlup's defense was mistaken identity. His petition alleging actual innocence was supported by at least three affidavits from inmates attesting to Schlup's innocence. *Id*. at 308. Two of the affidavits

---

[3] Although all eight Supreme Court justices who participated in the decision concurred in at least part of the judgment, the decision regarding whether or not Mr. House could overcome procedural default based on a showing of actual innocence was actually 5 to 3. Even with exculpatory DNA and blood testing, and sworn testimony from two witnesses that a third party confessed to the crime, *House* was still a close case.

identified the third assailant, who arrived at lunch with one of the other assailants. Videotape evidence showed that Mr. Schlup was the first inmate to arrive at the dining room around the time of the murder, some 65 seconds before guards responded to a distress call. Twenty-six seconds after the guards responded, one of the assailants ran into the dining room, dripping blood. He was followed by the inmate who two affidavits identified as the third assailant. *Id*. at 303. A lieutenant at the prison also provided an affidavit that called into question Mr. Schlup's participation in the attack. *Id*. at 311-312. Mr. Schlup's trial counsel failed to conduct interviews with any of the potential witnesses to the crime. *Id*. at 313.

The evidence in *House* and *Schlup* went well beyond an unsworn, ambiguous letter signed using an alias or nickname. Even if this letter was written by Brenda Ivey, Mr. Hutchinson's conviction was still supported by the sworn testimony of two other witnesses. (#2, at p. 5) While these individuals did not witness the murder, their testimony discredited Mr. Hutchinson's claim that he shot Mr. Ivey in self-defense.

    2.    *Postconviction counsel*

Mr. Hutchinson argues in the alternative that his lack of state postconviction counsel entitles him to equitable tolling. (#12, pp. 14-16) He correctly notes that lack of counsel during an inmate's first round of state postconviction proceedings may establish "cause" to overcome procedural default. (#12, p. 15) But the primary issue here is the statute of limitations, and Mr. Hutchinson must show more than cause for his failure to

9

timely file. He must show that "some extraordinary circumstance stood in the way." *Holland*, 130 S.Ct. at 2562. Being pro se until the limitations period runs is not an extraordinary circumstance; it is commonplace. Pro se status, lack of legal knowledge or legal resources, and confusion about, or miscalculations of, the limitations period are generally inadequate grounds to warrant equitable tolling. See *Shoemate v. Norris*, 390 F.3d 595, 598 (8th Cir. 2004).

Mr. Hutchinson points to cases where gross attorney negligence or attorney abandonment raised the possibility of equitable tolling. It does not appear, however, that Mr. Hutchinson justifiably relied on an attorney to timely file his state postconviction petitions. He did not have at attorney at that point. (#12, at p. 15) Mr. Hutchinson actually had assistance of counsel in filing this petition. There is no indication, however, that his counsel abandoned him, or that counsel's gross negligence (or any negligence) stood in the way of the timely filing of this petition.

Mr. Hutchinson alleges that the "outright denial of his right to counsel for purposes of state postconviction review" entitles him to equitable tolling. (#12, pp. 14-16) But the Supreme Court has "never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions." *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 1993 (1987)(citations omitted); see also *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012)(declining to decide whether an exception exists when the collateral proceeding provides the first opportunity to raise a claim of

ineffective assistance at trial). Finding that Mr. Hutchinson is entitled to equitable tolling based on his lack of counsel would require Arkansas to appoint postconviction counsel for every person convicted of a crime, or the one-year limitations period would essentially be abrogated.

Mr. Hutchinson also fails to explain how he diligently pursued his rights since his conviction became final. Without a showing of diligence, equitable tolling is not available. See *Earl v. Fabian*, 556 F.3d 717, 722 (8th Cir. 2009)("We will decline to apply the doctrine of equitable tolling if a habeas petitioner has not diligently pursued his rights.").

### IV. <u>Certificate of Appealability</u>

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court. The Court can issue a certificate of appealability only if Mr. Hutchinson has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). Here, Mr. Hutchinson has not provided any basis for issuing a certificate of appealability.

### V. <u>Conclusion</u>

Mr. Hutchinson's petition is time-barred. For that reason, the Court recommends that Judge Holmes dismiss the petition for writ of habeas corpus, with prejudice. And

because there is no substantial showing that Mr. Hutchinson was denied a constitutional right, the Court should decline to issue a certificate of appealability.

DATED this 10th day of September, 2013.

_____
UNITED STATES MAGISTRATE JUDGE